LORIE E. ALMON
CHRISTOPHER H. LOWE
MARY E. AHRENS
SEYFARTH SHAW LLP
620 Eighth Avenue, Suite 3200
New York, New York 10018
(212) 218-5500

Attorneys for Defendant
Costco Wholesale Corporation

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| SHENER M. GREENIDGE, | ECF Case |
| | |
| Plaintiff, | Case No. 09-CV-4224 (RRM)(ALC) |
| | |
| v. | |
| | |
| COSTCOS WHOLESALE, | |
| | |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DECLARATION OF JAMES HOLMES

I, JAMES HOLMES, declare under the penalty of perjury:

1.     At the time plaintiff Shener Greenidge ("Plaintiff") was employed by Costco

Wholesale Corporation ("Costco") in its Brooklyn warehouse, I was employed by Costco as the

Loss Prevention ("LP") Manager in the same warehouse and supervised Plaintiff.  I am now

employed by Costco as the Front End Manager in its Union, New Jersey warehouse.  I submit

this Declaration, which is based upon personal knowledge, in support of Costco's motion for

summary judgment.

2.     Costco is a retail/wholesale club that sells goods to its customers or "members." Costco operates large, no-frills facilities, which are designed as warehouses and which sell a wide variety of products.

3.     Costco operates a warehouse in Brooklyn, New York.

4.     At the time Plaintiff was employed by Costco, Jeffrey Fernandes ("Mr. Fernandes") was the General Warehouse Manager at the Brooklyn warehouse, Terence Berry ("Mr. Berry") was Costco's LP Manager for the Northeast Region, and Jeff Long ("Mr. Long") was Costco's Senior Vice President for the Northeast Region.

5.     Costco maintains an anti-discrimination and anti-harassment policy and did so at all relevant times. The policy against discrimination and harassment was contained in, among other places, Costco's Employee Agreement. Costco's Employee Agreement also set forth its Open Door policy, which provided clear procedures for reporting discrimination, harassment, and retaliation to management and Human Resources. An 11" by 17" poster containing Costco's anti-discrimination and anti-harassment policies and its Open Door policy and the name and telephone number that employees could contact to exercise the Open Door policy was prominently displayed in the Brooklyn warehouse during the time Plaintiff was employed there. It was and continues to be Costco's policy and practice to promptly investigate any complaints of inappropriate workplace behavior and to take effective remedial action as appropriate.

6.     I received and read a copy of the 2004 Costco Employee Agreement. Attached as Exhibit A is a true and correct copy of the Acknowledgement of Receipt of the 2004 Costco Employee Agreement, which I signed and dated April 24, 2006.

7.     Costco also provided yearly training concerning its anti-discrimination/harassment policy to employees and managers. I attended such training annually.

13132949v.2

Attached as Exhibit B is a true and correct copy of the Acknowledgment of Management Training that I signed, indicating that I attended Costco's Discrimination and Harassment Prevention Training on March 16, 2007. Attached as Exhibit C is a true and correct copy of the Leader's Guide Copy, Checklist for Supervisors [sic] Orientation Completion Form that I signed and dated March 16, 2007.

8.      Through Costco's policies and regular training, Costco makes it clear to all employees that it does not tolerate discrimination, harassment or retaliation and it will take appropriate disciplinary action, including termination, against anyone who engages in such behavior.

9.      On or about September 27, 2007, Mr. Berry and I interviewed Plaintiff for a position at Costco, and we recommended her to Mr. Fernandes for hire. Mr. Fernandes hired her as an entry level LP Agent.

10.     I had no knowledge that Plaintiff was pregnant while she was employed by Costco. I first became aware of her pregnancy in or about May 2008, when I was told that Plaintiff had filed a discrimination charge against Costco with the EEOC. I understand, however, that Plaintiff alleges that I was aware of her pregnancy at the time of her employment.

11.     On October 16, 2007, Plaintiff began working for Costco as a Probationary employee in the LP department of the Brooklyn warehouse.

12.     Costco's Employee Agreement explicitly sets out Costco's Code of Ethics, which applies to both Probationary and non-Probationary employees alike and includes the following:[1]

---

[1] True and correct copies of relevant excerpts of the 2007 Costco Employee Agreement are attached to the concurrently filed Declaration of Christopher H. Lowe.

## 1.0    INTRODUCTION

\*\*\*

### 2. Take care of our members

*. . . Our members are our reason for being - the key to our success.  If we don't keep our members happy, little else that we do will make a difference.  There are plenty of shopping alternatives for our members and if they fail to show up, we cannot survive . . . To continue to earn their trust, we pledge to:*

\*\*\*

•    Make our shopping environment a pleasant experience by making our members feel welcome as our guests.

\*\*\*

•    Provide our members with the best customer service in the retail industry.

\*\*\*

### 3. Take care of our employees

*Our employees are our most important asset . . . We pledge to provide our employees with:*

•    A safe and healthy work environment

\*\*\*

•    An atmosphere free from discrimination and harassment

\*\*\*

•    An Open Door Policy that allows access to ascending levels of management to resolve issues

\*\*\*

13.     Attached as Exhibit D is a true and correct copy of Costco's Standard of Ethics, which I signed and dated April 13, 2007.

14.     As a new hire, Plaintiff was a Probationary employee for a 90-day period.

4

15.    Costco evaluates Probationary employees' job performance and conduct during the Probationary period.  In order to complete the Probationary period, employees must comply with Costco's Code of Ethics and meet its performance expectations, which include conducting themselves in a professional manner, being courteous to members and employees, and performing their jobs satisfactorily.  The Probationary period is, in effect, a trial period during which Costco and the employee can assess one other and determine whether a continuing employment relationship is in their best interests.

16.    Costco's Employee Agreement explicitly sets out Costco's policies relating to the termination of Probationary and non-Probationary employees:

### 3.1    NON-EXEMPT EMPLOYEE STATUS

#### e.    Probationary Employees

- Are classified as Probationary during their first 90 days of employment.

- You will be evaluated during your 90-day Probationary period.  Continued employment is dependent upon a satisfactory evaluation.  **During the 90-day Probationary period, Costco reserves the right to terminate employment with or without cause or notice.**

        ***

### 4.8    TERMINATION

We reserve the right to discharge your employment for good and sufficient cause as defined by Costco.  This includes, but is not limited to, the "Causes for Termination" listed in Section 11.3. No prior Counseling Notice is required.  **In addition, we reserve the right to terminate employment at any time during the 90-day Probationary period without cause and without notice.**  No Counseling Notice is required.

Employment may also be terminated for repeated violations of policies listed under Standards of Conduct and Discipline in Section 11.0.

(emphasis added.)

17.     Costco's Employee Agreement also explicitly sets out Costco's policies relating to the causes for immediate termination for all employees, which do not require progressive discipline:

### 11.3   CAUSES FOR TERMINATION

\*\*\*

3.     Violation of Company policy prohibiting discrimination against or harassment of co-workers, suppliers or members including, but not limited to:

a. Malicious gossip

b. derogatory attacks

\*\*\*

8. Any act that jeopardizes the order of business and safety of the Company, the employee, other employees, customers, suppliers, or Company property including, but not limited to:

a.     Unbecoming conduct or horseplay

b.     Statement that damage the Company or defame any individual

\*\*\*

10.     Serious misconduct of any kind as defined by the Company.

\*\*\*

19.     Insubordinate conduct including, but not limited to:

a.     Refusal to comply with the direct instructions or directions of your Supervisor.

\*\*\*

18.     LP Agents at Costco are responsible for apprehending shoplifters, conducting safety inspections of the premises, performing security checks and conducting internal and external investigations. They dress in plain clothes and do not wear name tags so they cannot be

6

identified by potential shoplifters. Probationary employees in the LP department are not given keys or a radio until after their Probationary periods end.

19.    At the time of Plaintiff's employment, Patricia Labia ("Ms. Labia") and Todd Sharp ("Mr. Sharp") were employed by Costco as LP Agents in the Brooklyn Warehouse. Claribel Felix ("Ms. Felix") was an employee in Costco's Return to Vendor department.

20.    At the beginning of Plaintiff's employment, I instructed Ms. Labia to train Plaintiff as a LP Agent.

21.    During Plaintiff's first week of employment at Costco, Ms. Labia reported to me that (1) Plaintiff showed no interest in her training or learning about the LP department; (2) Plaintiff did not ask any questions or take any notes when being trained, and she would simply shrug or roll her eyes when Ms. Labia tried to test her comprehension or asked her to perform an assignment; (3) Plaintiff incorrectly placed the ink tags on a batch of new coats, after being carefully and precisely shown by Ms. Labia how and where to place them; (4) Plaintiff recorded the jewelry log as "good" when the jewelry log did not, in fact, have the requisite signatures, which were the very signatures Plaintiff was charged with verifying; (5) Plaintiff was rude to a customer who approached her and asked the price of razors; in response, Plaintiff waved her arm toward the registers and told the member that a cashier could tell him; (6) Plaintiff skipped around the sales floor; (7) Plaintiff jumped in front of members waiting for food samples; and (8) Plaintiff asked inappropriate questions about Jewish women.

22.    Because of the complaints about Plaintiff's performance, Mr. Berry and I made the decision to transfer Plaintiff from the LP department to another department. Plaintiff's alleged pregnancy was not a factor in that decision.

7

23.    When Mr. Fernandes learned that Plaintiff had been transferred from the LP department to another department, he insisted that she be immediately transferred back to the LP department. Plaintiff's transfer out of the LP department was for less than one day.

24.    Ms. Labia also reported to me that Plaintiff made rude and confrontational remarks to her on October 22, 2007, telling her that Plaintiff "knew all about [Ms. Labia] and her reputation." Plaintiff told me that Ms. Labia had called her "stupid" during the conversation. I informed Mr. Fernandes of the incident.

25.    Mr. Fernandes directed Plaintiff and Ms. Labia to prepare written explanations regarding the October 22, 2007 incident. Ms. Labia prepared the written explanation for Mr. Fernandes. Plaintiff did not comply with Mr. Fernandes' directive, despite repeated requests.

26.    At the beginning of Plaintiff's second week of employment, I instructed Mr. Sharp to train her as a LP Agent.

27.    During Plaintiff's second week of employment, Mr. Sharp similarly reported to me that Plaintiff displayed a lack of interest, unprofessional behavior, and unimpressive performance. Specifically, he reported that: (1) Plaintiff did not focus while he tried to train her, never took notes, and talked on her cell phone excessively; (2) Plaintiff was very loud and drew an inordinate amount of attention to herself, which was particularly inappropriate given the nature of her job function in the LP department; and (3) Plaintiff talked excessively about her personal life with Mr. Sharp (despite him making clear that he was not interested in such discussion).

28.    On or about October 23, 2007, I began preparing a "Progress Review," which included a list of Areas of Concern, that I intended to administer to Plaintiff on November 1, 2007. The Progress Review states in part: "Shener has not conducted herself professionally and

failed to perform her duties in a manner that reflected credit upon herself, her employer and the Loss Prevention Department. To date, Shener has not demonstrated any interest in her loss prevention duties and responsibilities, which is totally unacceptable. As a result of these issues, Shener will be terminated from employment at Costco Wholesale." I later signed the Progress Review and dated it November 1, 2007.

29. I also prepared the accompanying list of Areas of Concern, which includes but is not limited to the following: "Attitude - Projecting non-interest in training materials," "Non-attentive to training," "Disregard of Loss Prevention policies and procedures regarding agents [sic] daily duties and expectations," "Lack of initiative," "Displays an unprofessional demeanor" and "Team skills." I later signed the Areas of Concern document and dated it November 1, 2007.

30. Then, later that week, Ms. Felix reported to me that Plaintiff said "obnoxious things" to her and "was being rude to the members" when Plaintiff was guiding members to the elevator when the escalator was broken. Ms. Felix reported that Plaintiff said to her: "You know Pat [Labia] the lady from LP with the mohawk, I told her ass off. I cursed her out the other day because she was being disrespectful to me so I put her in her place."

31. Ms. Felix also reported to me that Plaintiff told members: (1) "I don't know, I ain't the president of Costco" when a member asked when the escalator would be fixed; (2)"Stay to your right, what you don't know your left from your right"; and (3) "Ya [sic] ever been to the Costco in Lawrence, it's cleaner and you wouldn't have to deal with this because they only have one floor, so you should go there, that's were I shop, it's better."

32. I believed Ms. Labia's, Mr. Sharp's and Ms. Felix's reports regarding Plaintiff to be true and had no reason to believe that they were not true.

33.    I informed Mr. Fernandes of Ms. Labia's, Mr. Sharp's and Ms. Felix's reports regarding Plaintiff's poor performance and misconduct towards members and employees.

34.    On November 1, 2007, Mr. Fernandes and I met with Plaintiff.  Plaintiff had still not complied with Mr. Fernandes' directive regarding the preparation of a statement concerning the confrontation with Ms. Labia.  Mr. Fernandes terminated Plaintiff's employment with Costco.

35.    I prepared an Employee Counseling Notice documenting the reports from Ms. Felix. It stated in part: "On . . . 10/30/07 you violated Costco policy and/or management became aware of the violation: . . . discourtesy, insolence, or rudeness to a member or supplier . . . Shener was rude to members. She snatched the cart from the member and told the member in a rude manner to get back in line. Shener also told the members to shop at the Lawrence location, it's better than shopping here." I signed the document and dated it November 1, 2007.

36.    I also prepared an Employee Counseling Notice that documented Plaintiff's failure to comply with Mr. Fernandes' directive.  It stated in part: "On 10/24/2007, after a meeting with the General Manager, Jeffrey Fernandes, Shener was instructed to prepare a statement describing any acts of disrespect against her by employees. As of Thursday, 11/1/07 Shener failed to submit the statement andon [sic] 10/30/07 she told Jim Holmes that she left it in her other car . . . Due to her blatant disregard of a direct order given by the General Manager, and according to the Costco Handbook regarding "Causes of Immediate Termaination", Shener will be terminated from employment at Costco Wholesale." I signed the Employee Counseling Notice and dated it November 1, 2007.

37.    Finally, I prepared a Termination/Resignation document relating to Plaintiff that states: "Shener has not carried out her responsibilities to accept training.  She has spread

malicious gossip and is very arrogant towards members. Shener refused to comply with a direct order given by the General Manager regarding wanting a report of an incident. [Plaintiff's] work ethic is totally unsatisfactory."

38.    On the Termination/Resignation document, I included Costco Codes "TA10" (Serious Misconduct), "TA19" (Insubordination), "TAO3" (Discrimination Including Malicious Gossip and Derogatory Attacks" and "TAX1" (Probationary Term - Work Initiative Unsatisfactory."

I declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Date executed: February 16, 2011

James Holmes

# Exhibit A

MES, JAMES
Emp# 126729 Dept/Sub: 083020
Adj Hire: 09/05/97

## ACKNOWLEDGMENT OF RECEIPT
## OF THE 2004 COSTCO EMPLOYEE AGREEMENT

I hereby acknowledge that I have received a copy of the Costco Employee Agreement. I understand that I am responsible for reading this Agreement.

I understand that Costco policy prohibits an employee under the influence of an unauthorized substance from working, and that testing may be required of an employee who is unable to perform the functions of their job due to the possible use of an unauthorized substance, or who is involved in or who contributed to an accident involving injury or harm to individuals, property or equipment.

I understand that I will be classified as a Probationary Employee during the first 90 days of my employment, and that my employment may be terminated at any time, for any reason, during this Probationary period.

I understand that this Agreement is designed to familiarize me with the various Costco policies. It is not intended to replace the actual language in various policies, procedures, etc., but merely to act as a condensed summation.

I understand that this Agreement is intended only as a source of information in a general statement of Company policies. Costco may, from time to time, revise its policies, practices, and/or procedures. This Agreement revokes and supersedes any previous Employee Agreement booklets, publications or documents addressing Company policies.

I understand that I must present proof of identity and employment eligibility within three days of my employment to comply with the Immigration Reform and Control Act of 1986.

_Jim Holmes_
Print Your Name

_[signature]_
Your Signature

126729
Employee Number

4/24/06
Date

CONFIDENTIAL
D 00688

# Exhibit B

 **UNIVERSITY**

**Acknowledgment of
Management Training**

**HR Month**

*Discrimination and Harassment
Prevention Policies and Procedures*

I acknowledge that on ___March 16, 2007___, I attended Costco's

<small>Month / Day          Year</small>

Discrimination and Harassment Prevention Training and that I understand: 1) every
employee has the right to work in an environment free from harassment, discrimination
and retaliation; 2) I have a responsibility not to engage in behaviors that constitute
harassment, discrimination or retaliation; 3) if I feel I am being harassed, discriminated
against or retaliated against, I have the right and responsibility to either communicate
this directly to the harasser or to a non-involved Supervisor; and 4) as a Supervisor or
Manager, I am responsible for preventing harassment, discrimination and retaliation in
the workplace and for taking prompt effective action if I know or have reason to know of
these behaviors in the workplace.

_Brooklyn #313_
Location #

_Jim Holmes_
Print Name

_126729_
Employee #

_[signature]_
Signature

_John Korczyk_
Trainer (Print Name)

*Place signed document in employee's personnel file and key training into the HRIS
system (the code is HR05).*

ED0128.DOC                    *REVISED 1/10/06*

**CONFIDENTIAL
D 00685**

# Exhibit C

## Leader's Guide Copy

### Checklist for Supervisors Orientation Completion Form

☑ Our Mission Statement

☑ The change from employee to supervisor

☑ Harassment

☑ ADA

☐ Family Medical Leave Act (FMLA)

☐ Discrimination

☐ Violence in the Workplace

☐ Workers' Compensation

☑ Drug Free Workplace

☑ Selecting the Best

☑ Coaching

☑ Performance Appraisals

☑ Counseling Employees

☑ Safety

☑ Employee Assistance Program

☐ How to access reference and training materials

**Supervisor:** I have reviewed the Supervisors Orientation Guide and have a working knowledge of each subject.

**Manager:** By checking off each topic, I verify that the below named supervisor has a working knowledge of each subject.

Supervisor Jimmy Holmes   Signature _____   Date 3/16/07

Employee Number 126725

Manager John Korczyk   Signature _____   Date 3/16/07

*Attach to supervisor's EIC in personnel file*

ED0039.doc   © 1999, All Rights Reserved   Revised: March 15, 2002

CONFIDENTIAL
D 00684

# Exhibit D



STANDARD OF ETHICS
(MANAGERS/SUPERVISORS)

The Costco Mission Statement sets forth our commitment to obey the law, take care of our members and employees, respect our suppliers, and reward our shareholders. We cannot accomplish this unless we adhere to a set of moral principles that project our Mission's objectives to our fellow employees, members, suppliers and community. In accepting a position of management, you must be committed to and demonstrate a role of honesty and forthrightness. Any time there is the slightest doubt about an activity that could be questioned regarding honesty, integrity or intent, you must discuss it with your Manager or Regional Vice President to remove any doubt. Managers above all else lead by example.

- You must treat employees, members and suppliers with respect and dignity.
- Inappropriate fraternization with employees creates an atmosphere of conflict of interest and favoritism and is not acceptable.
- Managers must always strive to keep the workplace free of any form of harassment or discrimination. All members of management must review, be versed in, and administer the policy prohibiting harassment and discrimination as outlined by the Costco Employee Agreement. All forms of harassment, whether due to race, color, national origin, ancestry, sex, sexual orientation, gender identity or expression, religion, age, pregnancy, disability, work related injury, covered veteran status, political ideology or any other reason is prohibited.
- Suppliers are dealt with in the same honest and forthright manner that we expect from them.
- Personal relationships with any person providing a business service to Costco are generally prohibited. Do not give, seek or accept from any person or company doing business with Costco any gift, service, loan, entertainment or trip of any value. Your position at Costco must never be used to influence a supplier or any person doing business with us to provide a benefit to you or your family.
- Without proper authorization, you may not release confidential information to outside sources.
- Never manipulate records (payroll, personnel, inventory, etc.) to enhance performance or results.
- Do not exploit Costco merchandise, equipment supplies and/or employees for personal gain.
- Our management commitment requires us to operate within the law. You must adhere to Company policies and directives in all aspects of the operation.
- All Managers are to be aware of and administer our Drug and Alcohol-Free Workplace Policy as defined in the Costco Employee Agreement.

Following and administering the standards of conduct and discipline as stated in the Costco Employee Agreement is one way to foster our goal of maintaining a safe and efficient working and shopping environment.

The above common sense guidelines can never answer every question or solve all problems. At the core of our philosophy as a Company must be the implicit understanding that not one of us is required to lie or cheat on behalf of Costco or to enhance our company or personal performance. Managers must never engage in any activity which could raise a question concerning their integrity.

EMPLOYEE NAME: _James Holmes_
(please print)

SIGNATURE: _____

DATE: _4/13/07_

COSTCO

001981-2                                © 2007 All Rights Reserved                Leader Notes – Ver. 3

HR Month

CONFIDENTIAL
D 00682