LORIE E. ALMON
CHRISTOPHER H. LOWE
MARY E. AHRENS
SEYFARTH SHAW LLP
620 Eighth Avenue, Suite 3200
New York, New York 10018
(212) 218-5500

Attorneys for Defendant
Costco Wholesale Corporation

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x
SHENER M. GREENIDGE,                : ECF Case
                                    :
                                    : Case No. 09-CV-4224 (RRM)(ALC)
                        Plaintiff,  :
                                    :
        v.                          :
                                    :
COSTCOS WHOLESALE,                  :
                                    :
                        Defendant.  :
                                    :
------------------------------------x

## DECLARATION OF JEFFREY FERNANDES

I, JEFFREY FERNANDES, declare under the penalty of perjury:

1. At the time plaintiff Shener Greenidge ("Plaintiff") was employed by Costco Wholesale Corporation ("Costco"), I was employed by Costco as the General Warehouse Manager in its Brooklyn warehouse. My last day of employment with Costco was in May 2010. I submit this Declaration, which is based upon personal knowledge, in support of Costco's motion for summary judgment.

2. Costco is a retail/wholesale club that sells goods to its customers or "members." Costco operates large, no-frills facilities, which are designed as warehouses and which sell a wide variety of products.

13135211v.2

3. Costco operates a warehouse in Brooklyn, New York.

4. I was the General Warehouse Manager at the Brooklyn warehouse from approximately 2006 through 2008. As the General Warehouse Manager, I held the highest position in the warehouse. I supervised approximately 420 to 450 employees, and was responsible for all aspects of the day-to-day operations.

5. At the time Plaintiff was employed by Costco, James Holmes ("Mr. Holmes") was the Loss Prevention ("LP") Manager at the Brooklyn warehouse. Mr. Holmes was Plaintiff's immediate supervisor.

6. Terence Berry ("Mr. Berry") was Costco's Regional LP Manager for the Northeast Region, and Jeff Long ("Mr. Long") was Costco's Senior Vice President for the Northeast Region.

7. Costco maintained an anti-discrimination and anti-harassment policy at all relevant times. The policy against discrimination and harassment was contained in, among other places, Costco's Employee Agreement. Costco's Employee Agreement also set forth its Open Door policy, which provided clear procedures for reporting discrimination, harassment, and retaliation to management and Human Resources. An 11" by 17" poster containing Costco's anti-discrimination and anti-harassment policies and its Open Door policy and the name and telephone number that employees could contact to exercise the Open Door policy was prominently displayed in the Brooklyn warehouse during the time Plaintiff was employed there. It was Costco's policy and practice to promptly investigate any complaints of inappropriate workplace behavior and to take effective remedial action as appropriate.

13135211v.2

8. I received and read a copy of the 2007 Costco Employee Agreement. Attached as Exhibit A is a true and correct copy of the Acknowledgement of Receipt of the 2007 Costco Employee Agreement, which I signed and dated March 22, 2007.

9. Costco also provided yearly training concerning its anti-discrimination/harassment policy to employees and managers. I attended such training annually.

10. Through Costco's policies and regular training, Costco made it clear to all employees that it did not tolerate discrimination, harassment or retaliation, and it would take appropriate disciplinary action, including termination, against anyone who engaged in such behavior.

11. In or about September 2007, Mr. Berry and Mr. Holmes recommended Plaintiff for hire, and I made the decision to hire Plaintiff. Plaintiff was hired as an entry level LP Agent.

12. I had no knowledge that Plaintiff was pregnant while she was employed by Costco. I first became aware of her pregnancy in or about May 2008, when I was told that Plaintiff had filed a discrimination charge against Costco with the EEOC. I understand, however, that Plaintiff alleges that I was aware of her pregnancy at the time of her employment.

13. On October 16, 2007, Plaintiff began working for Costco as a Probationary employee in the LP department of the Brooklyn warehouse.

14. Costco's Employee Agreement explicitly set out Costco's Code of Ethics, which applied to both Probationary and non-Probationary employees alike and included the following:[1]

---

[1] True and correct copies of relevant excerpts of the 2007 Costco Employee Agreement are attached to the concurrently filed Declaration of Christopher H. Lowe.

3

13135211v.2

**1.0   INTRODUCTION**

\*\*\*

**2. Take care of our members**

*... Our members are our reason for being - the key to our success. If we don't keep our members happy, little else that we do will make a difference. There are plenty of shopping alternatives for our members and if they fail to show up, we cannot survive ... To continue to earn their trust, we pledge to:*

\*\*\*

- Make our shopping environment a pleasant experience by making our members feel welcome as our guests.

\*\*\*

- Provide our members with the best customer service in the retail industry.

\*\*\*

**3. Take care of our employees**

*Our employees are our most important asset ... We pledge to provide our employees with:*

- A safe and healthy work environment

\*\*\*

- An atmosphere free from discrimination and harassment

\*\*\*

- An Open Door Policy that allows access to ascending levels of management to resolve issues

\*\*\*

15. Attached as Exhibit B is a true and correct copy of Costco's Standard of Ethics, which I signed and dated February 6, 2000.

16. Like all new hires, Plaintiff's Probationary period was for 90-days.

17. The Probationary period was a trial employment period, during which Costco

assessed the Probationary employee's job performance and conduct to determine whether the employee would be a good fit for continued employment. During the Probationary period, Costco expected that employees not only comply with Costco's Code of Ethics, but also extend their best effort to train for and perform their job duties, and display professional and courteous behavior. Continued employment was dependent upon satisfactory completion of the Probationary period.

18. As a General Warehouse Manager, I believed it was critical for all Probationary employees to demonstrate a superior effort, a willingness to assist members and employees, and a curiosity and an eagerness to learn Costco's policies and procedures, as well as to meet or exceed Costco's expectations regarding conduct and job performance. Again, this was the Probationary employees' opportunity to impress management and demonstrate that they warrant continued employment.

19. Costco's Employee Agreement explicitly set out Costco's policies relating to the termination of Probationary and non-Probationary employees:

> 3.1 NON-EXEMPT EMPLOYEE STATUS
>
> e. **Probationary Employees**
>
> - Are classified as Probationary during their first 90 days of employment.
>
> - You will be evaluated during your 90-day Probationary period. Continued employment is dependent upon a satisfactory evaluation. **During the 90-day Probationary period, Costco reserves the right to terminate employment with or without cause or notice.**
>
> \*\*\*
>
> 4.8 TERMINATION
>
> We reserve the right to discharge your employment for good and sufficient cause as defined by Costco. This includes, but is not limited to, the "Causes for Termination" listed in Section 11.3. No prior Counseling Notice is required. **In addition, we reserve the right to terminate employment at any time during**

**the 90-day Probationary period without cause and without notice.** No Counseling Notice is required.

Employment may also be terminated for repeated violations of policies listed under Standards of Conduct and Discipline in Section 11.0.

(emphasis added.)

20.   Costco's Employee Agreement also explicitly set out Costco's policies relating to the causes for immediate termination for all employees, which did not require progressive discipline:

**11.3   CAUSES FOR TERMINATION**

\*\*\*

3.   Violation of Company policy prohibiting discrimination against or harassment of co-workers, suppliers or members including, but not limited to:

   a. Malicious gossip

   b. derogatory attacks

\*\*\*

8.   Any act that jeopardizes the order of business and safety of the Company, the employee, other employees, customers, suppliers, or Company property including, but not limited to:

   a.   Unbecoming conduct or horseplay

   b.   Statements that damage the Company or defame any individual

\*\*\*

10.   Serious misconduct of any kind as defined by the Company.

\*\*\*

19.   Insubordinate conduct including, but not limited to:

   a.   Refusal to comply with the direct instructions or directions of your Supervisor.

\*\*\*

6

13135211v.2

21. LP Agents at Costco were responsible for apprehending shoplifters, conducting safety inspections of the premises, performing security checks and conducting internal and external investigations. They dressed in plain clothes and did not wear name tags so they could not be identified by potential shoplifters. Probationary employees in the LP department were not given keys or a radio at least until after their Probationary period ended.

22. At the time of Plaintiff's employment, Patricia Labia ("Ms. Labia") and Todd Sharp ("Mr. Sharp") were employed by Costco as LP Agents in the Brooklyn Warehouse. Claribel Felix ("Ms. Felix) was an employee in Costco's Return to Vendor department.

23. During Plaintiff's employment at Costco, Mr. Holmes informed me that Ms. Labia, Mr. Sharp and Ms. Felix had each made unsolicited reports to Mr. Holmes complaining about Plaintiff's unsatisfactory job performance and misconduct towards members and employees.

24. I believed Ms. Labia's, Mr. Sharp's and Ms. Felix's reports regarding Plaintiff to be true and had no reason to believe that they were not true.

25. When I learned that Mr. Holmes and Mr. Berry had made the decision to transfer Plaintiff from the LP department to another department, as a result of the reports about her poor performance and misconduct, I insisted that she be immediately transferred back to the LP department, because I wanted to allow Plaintiff the opportunity to improve her performance and to succeed in the LP department, and I did not want to transfer an employee with performance issues to another department. Plaintiff's transfer was for less than one day.

26. Mr. Holmes also informed me that Ms. Labia reported that Plaintiff had made rude and confrontational remarks to her on October 22, 2007, telling Ms. Labia that Plaintiff

"knew all about [Ms. Labia] and her reputation." Mr. Holmes also informed me that Plaintiff alleged that Ms. Labia had called her "stupid" during the conversation.

27. I directed Plaintiff and Ms. Labia to prepare written explanations regarding the October 22, 2007 incident. Ms. Labia complied and provided me with a written explanation. Plaintiff did not comply with my directive, despite repeated requests. Failure to comply with my directive, especially as a Probationary employee and after repeated requests, was flagrant insubordination warranting termination, as set forth in the Employee Agreement.

28. As the General Warehouse Manager, I had final authority on all terminations of Costco employees during their Probationary periods.

29. I made the decision to terminate Plaintiff's employment as a Probationary employee based on: (1) Ms. Labia's, Mr. Sharp's and Ms. Felix's multiple, unsolicited reports over a two-week period regarding Plaintiff's poor performance and misconduct towards members and employees; and (2) Plaintiff's failure to prepare the written report as I had requested. I believed the reports of Plaintiff's unsatisfactory performance and misconduct towards members and employees to be even more alarming and her failure to comply with my directive even more egregious, given that Plaintiff was a Probationary employee with Costco for only two weeks and was supposedly exhibiting her best behavior and effort in order to attain non-Probationary employment status.

30. Even assuming that I was aware of Plaintiff's pregnancy (which I was not), Plaintiff's pregnancy was not a factor in my decision.

31. Regardless of Plaintiff's pregnancy, I would have made the same decision to terminate Plaintiff's employment based on the reports of her unsatisfactory performance and misconduct towards members and employees and her insubordination.

13135211v.2

32. On November 1, 2007, Mr. Holmes and I met with Plaintiff, and I terminated her employment with Costco.

33. As the General Warehouse Manager, terminating a Probationary worker's employment was not atypical. Between 2006 and 2008, I terminated the employment of at least four male employees in the Brooklyn warehouse during their Probationary periods.

34. While I was the General Warehouse Manager, it was not uncommon for female employees to become pregnant, take maternity leave, and remain employed by Costco. At least 28 employees from the Brooklyn warehouse went on maternity leave between 2006 and 2008, and at least half of them returned to work. The others voluntarily resigned.

I declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Date executed: February 16, 2011

_____
Jeffrey Fernandes

# Exhibit A

**Employee Agreement**                                           **COSTCO**
                                                                 **WHOLESALE**

# ACKNOWLEDGMENT OF RECEIPT
# OF THE 2007 COSTCO EMPLOYEE AGREEMENT

I hereby acknowledge that I have received a copy of the 2007 Costco Employee Agreement. I understand that I am responsible for reading this Agreement and complying with the policies contained in the Agreement. I understand that Costco has strict policies against unlawful discrimination, harassment and retaliation. I agree to abide by these policies.

I understand that Costco policy prohibits an employee from working while under the influence of an unauthorized substance, and that, where consistent with applicable law, Costco may require testing of an employee upon a reasonable suspicion that the employee is under the influence of an unauthorized substance, or has contributed to an accident involving injury or harm to individuals, property, or equipment.

I understand that I will be classified as a Probationary Employee during the first 90 days of my employment, and that my employment may be terminated at any time, for any reason, during this Probationary period.

I understand that this Agreement summarizes various Costco policies. It is not intended to replace the actual language in various policies and procedures, but merely to act as a condensed summary.

Costco may, from time to time, revise its policies, practices, or procedures. This Agreement supersedes any previous Employee Agreement and any document addressing Company policies that is inconsistent with this Agreement. I understand that whenever Company policy conflicts with applicable law, Costco will comply with the law.

_____
Print Your Name

_____
Your Signature

_____
Employee Number  132846

_____
Date

2007 US Employee Agreement                                       87

CONFIDENTIAL
D 00691

# Exhibit B


*Attn. Warehouse Manager*

## Standard of Ethics

The Costco Mission Statement sets forth our commitment to obey the law, take care of our members and employees, respect vendors and reward our shareholders. We cannot accomplish this unless we adhere to a set of moral principles that project our Mission goal to our fellow employees, members, vendors and community. In accepting a position of warehouse management you must be committed to and demonstrate a role of honesty and forthrightness. Managers above all else lead by example.

- The rights of employees, members and vendors must be treated with respect and dignity.
- Inappropriate fraternization with employees creates an atmosphere of conflict of interest and favoritism and is not acceptable.
- Managers must always strive to keep the workplace free of any form of harassment or discrimination. All members of warehouse management must review, be versed in and administer the policy prohibiting harassment and discrimination as outlined by the Costco Employee Agreement. All forms of harassment, whether due to race, color, national origin, ancestry, sex, sexual orientation, religion, age, disability, veteran status, political ideology or any other reason is prohibited.
- Vendors are dealt with in the same honest and forthright fashion we expect from them.
- Personal relationships with any person providing a business service to Costco is not sound practice and generally prohibited. Do not seek or accept from any person or company doing business with Costco any gift, service, loan, entertainment or trips of any value. Your position at Costco must never be used to influence a vendor or any person doing business with us to personally benefit you or your family.
- Without proper authorization, confidential information must never be released to outside sources.
- Records (payroll, personnel, inventory, etc.) are never manipulated in an effort to enhance warehouse performance or results.
- Costco merchandise, equipment supplies and employees are not to be exploited for personal gain.
- Our management commitment requires us to operate within the law in all aspects. Company policies and directives are adhered to in all aspects of the operation.
- All managers are to be aware of and administer our drug and alcohol free workplace policy as defined in the Costco Employee Agreement.
- Our goal is a safe and efficient working and shopping environment. Following and administering the standards of conduct and discipline as stated in the Costco Employee Agreement is one of the management tools used to create this environment.

The above are some common sense guidelines for our job. Guidelines can never answer every question or solve all problems. At the core of our philosophy as a company must be the implicit understanding that not one of us is required to lie or cheat on behalf of Costco or to enhance our company or personal performance. Managers must never engage in any activity which should raise a question concerning their integrity.

Any time there is the slightest doubt about an activity that could be questioned regarding honesty, integrity and intent it must be presented and discussed with your Regional Vice President to remove any shade of doubt.

_Jeffrey Fernandes_
Name

_[signature]_  2/06/00
Signature  Date

CONFIDENTIAL
D 00693