UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SHENER M. GREENIDGE,

        Plaintiff,

   - against -

COSTCOS WHOLESALE,

        Defendant.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**
09-CV-4224 (RRM)(LB)

ROSLYNN R. MAUSKOPF, United States District Judge.

    Plaintiff *pro se* Shener M. Greenidge ("plaintiff" or "Greenidge"), filed this action against Costco Wholesale Corporation ("defendant" or "Costco"), for pregnancy and/or gender discrimination pursuant to 42 U.S.C. § 2000e-2(a)(1). Plaintiff claims that defendant terminated her employment because she was pregnant. Presently before the Court is defendant's motion for summary judgment pursuant to Rule 56(c). For the reasons set forth below, defendant's motion is DENIED.

## BACKGROUND[1]

    On October 16, 2007, plaintiff began work for defendant at a Costco location in Brooklyn, New York. (Def. Rule 56.1 Statement (Doc. No. 32) at ¶ 23.) Costco sells a wide variety of goods to consumers who shop at Costco's large warehouse-like facilities. (*Id.* at ¶ 1.) Plaintiff was hired to work in the Loss Prevention ("LP") department, which is generally tasked

---

[1] The following material facts are taken primarily from the Local Rule 56.1 statement submitted by the defendant and the affidavits and exhibits submitted in connection with the defendant's motion for summary judgment. Plaintiff, in derogation of Local Rule 56.1(b) has failed to respond to defendant's 56.1 statement. Ordinarily, failure to comply with the Local Rules regarding 56.1 statements would result in the material facts of the complying party's statement being deemed admitted for the purposes of this motion. However, a *pro se* litigant should be given special latitude in responding to a summary judgment motion. *See McPherson v. Coombe*, 174 F.3d 276, 280-81 (2d Cir. 1999). Moreover, courts have "broad discretion" in dealing with a party's failure to comply with local court rules. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001). Accordingly, the Court has conducted an independent review of the record and only accepts defendant's Rule 56.1 statement of facts where supported by admissible record evidence.

with preventing shoplifting and other theft. (*Id.* at ¶¶ 24, 36.) Plaintiff began work for Costco as a "probationary employee," which enabled Costco to terminate plaintiff with or without cause or notice for the first 90 days of her employment. (*Id.* at ¶¶ 28, 31.) Costco had in place various policies to prevent workplace discrimination and foster a friendly and professional atmosphere. (*See id.* at ¶¶ 13, 15, 26.)

On October 23, 2007, a Costco manager began preparation of a "Progress Review," a document that would serve as an outline for a discussion with plaintiff about her performance as a Costco employee. (*Id.* at ¶¶ 68-71.) Defendant concluded that plaintiff would be terminated from her employment with Costco due to inappropriate behavior. (*Id.* at ¶ 68.) On November 1, 2007, plaintiff met with two Costco managers to discuss the Progress Review. (*Id.* at ¶ 82.) The managers informed plaintiff that her employment with Costco was terminated because she was insubordinate and had failed to satisfactorily engage in the training process. (*Id.* at ¶¶ 83, 86-87.) According to defendant, the Costco managers presented several documents to plaintiff related to her poor performance and termination, but plaintiff refused to sign any of them. (*See id.* at ¶¶ 84-88.)[2] For her part, plaintiff claims none of the incidents described in the documents or referenced by her managers occurred, that she was never shown any of the documents

---

[2] Those documents included certain allegations, such as that she, *inter alia*: (1) became involved in a verbal altercation with the LP agent who was training her and refused to provide a written statement regarding the incident after being instructed to do so by a manager; (2) told customers they should shop at the Costco location in Lawrence, New Jersey, instead of the Brooklyn location; (3) conducted herself in an unprofessional manner by skipping around the sales floor; and (4) spent "more time focusing on merchandise to purchase and demo products to eat rather than on her job." (Lowe Declaration at Exs. I, M, N, O, P.) The managers also allegedly relied on certain other incidents related to them by plaintiff's coworkers: (1) plaintiff failed to perform simple tasks properly, such as attaching theft-deterrent tags to clothing and verifying signatures in a jewelry log; (2) when a customer approached plaintiff to ask her about the price of a package of razors, plaintiff rudely waved her arm toward the cash registers and told the customer to ask a cashier; and (4) plaintiff jumped in front of customers waiting for food samples. (Declaration of James Holmes (Doc. No 33) ("Holmes Dec.") at ¶¶ 21, 24, 25, 31.)

2

memorializing those incidents or conduct, and that all of the documents were created after she was fired.[3]  (Pl. Tr. (Doc No. 35-2) at 98, 112-113, 126.)

Plaintiff was pregnant during her interview and subsequent employment at Costco.  (*See id.* at ¶ 5.)  Plaintiff's pregnancy was physically obvious at all relevant times, although plaintiff stated at a deposition that she "hid her pregnancy by wearing a jacket" during her job interview.  (*Id.* at ¶ 40.)  However, plaintiff equivocates on whether Costco was aware of her pregnancy.  On one hand, plaintiff claims that Costco personnel knew she was pregnant either because she told them about it, or because it was physically obvious.  (*See id.* at ¶¶ 43, 44, 45.)  On the other hand, plaintiff stated at a deposition that "the so-called [] managers" did not know that she was pregnant.  (*See id.* at ¶ 43.)  Nonetheless, plaintiff's allegations of discriminatory conduct, discussed below, necessarily imply that Costco management knew she was pregnant.

Plaintiff claims that Costco personnel made statements to her regarding her pregnancy before she was terminated.  First, she claims that a Costco employee remarked to someone over the phone that he did not want plaintiff working in his department because she was pregnant.  (*Id.* at ¶ 92.)  Second, plaintiff claims that two Costco employees asked her how far along her pregnancy was.  (*Id.* at ¶ 97.)  Third, plaintiff claims that she overheard a conversation between a Costco manager and employee, wherein the employee told the manager that he did not want plaintiff working in his department because she was pregnant, to which the manager replied that he would "see what [he] could do."  (*Id.* at ¶¶ 101-02.)  Fourth, plaintiff asserts that during the meeting at which she was terminated on November 1, 2007, the store manager or her direct supervisor told her that she was being terminated because she could not continue to work in her

---

[3] Plaintiff does admit that she failed to comply with a manger's directive to provide a written statement regarding her incident with her trainer.  (Pl. Tr. (Doc. No. 38-2) at 143.)

3

state of pregnancy. (*Id.* at ¶ 105.) Plaintiff did not report any of these incidents to Costco. (*Id.* at ¶ 120.)

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), which in turn issued her a right-to-sue letter on July 1, 2009. On September 21, 2009, plaintiff filed a complaint in this Court, alleging a cause of action for gender and/or pregnancy discrimination under Title VII. (Doc. No. 1.) Plaintiff alleged that Costco employees and/or managers (1) knew about her pregnancy, and (2) demoted her and/or took other employment actions based on her status as a pregnant woman. (*Id.*) Moreover, plaintiff alleged that she was terminated and the reason given for her termination was that she was pregnant. (*Id.*)

Costco answered the complaint and the case proceeded to discovery. On December 16, 2010, defendant filed a letter with the Court seeking a pre-motion conference in anticipation of filing a motion for summary judgment. (Doc. No. 20.) On April 21, 2011, plaintiff filed a response to defendant's request for a pre-motion conference. (Doc. No. 29.) Finally, on May 9, 2011, defendant submitted a fully briefed motion for summary judgment. (Doc. Nos. 30-36.) The Court will consider plaintiff's April 21, 2011 letter as her opposition to defendant's motion.

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine issue as to any material fact" such that the moving party is entitled to "judgment as a matter of law." Fed. R. Civ. P. 56(c). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" *Holtz*, 258 F.3d at 69 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To be "genuine," an issue of fact must be supported by evidence "such that a reasonable jury could return a verdict for the nonmoving party," *Holtz*, 258 F.3d at 69, and "a court must resolve all ambiguities and draw all reasonable inferences against the moving party."

*Alston v. N.Y.C. Transit Auth.,* No. 02-Civ.-2400, 2003 WL 22871917, at *1 (S.D.N.Y. Dec. 3, 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Where the non-moving party is proceeding *pro se*, the court must interpret that party's supporting papers liberally, that is, interpret them "to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994)).

## DISCUSSION

A court's analysis of an unlawful employment discrimination allegation proceeds either according to the familiar burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or under the so-called mixed motive theory articulated in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). However, regardless of whether the *McDonnell Douglas* or *Price Waterhouse* framework is applied, the ultimate issue is: "Whether the plaintiff has presented evidence from which a rational finder of fact could conclude that the defendant discriminated against [her] illegally." *Jalal v. Columbia Univ.*, 4 F. Supp. 2d 224, 234 (S.D.N.Y. 1998). The test set forth in *McDonnell Douglas* only applies where a plaintiff has put forth no evidence of direct discrimination. *See St. Louis v. N.Y.C. Health and Hosp. Corp.*, 682 F. Supp. 2d 216, 229 (E.D.N.Y. 2010). Where plaintiff can satisfy the "greater burden" of presenting "smoking gun" evidence of discrimination, the mixed motive test established by *Price Waterhouse* is proper. *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 176-77 (2d Cir. 2006) (quotation marks omitted). For the purposes of this motion, defendants rely solely on the "mixed motive" test established by *Price Waterhouse*; as such, the Court conducts its analysis on that basis.

In a mixed motive case, plaintiff must first show that "a prohibited discriminatory factor played a 'motivating part' in a challenged employment decision." *Sista*, 445 F.3d 161, 173 (2d

5

Cir. 2006) (citations omitted). Once plaintiff satisfies her burden, then "the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision anyway." *Smith v. Tuckahoe Union Free Sch. Dist.*, No. 03-Civ.-7951(PGG), 2009 WL 3170302, at *6 (S.D.N.Y. Sept. 30, 2009) (citing *Raskin v. Wyatt Co.*, 125 F.3d 55, 60 (2d Cir. 1997)). "Proving that the same decision would have been justified . . . is not the same as proving that the same decision would have been made." *Price Waterhouse*, 490 U.S. at 252 (internal quotation marks omitted). "An employer may not . . . prevail in a mixed-motives case by offering a legitimate and sufficient reason for its decision if that reason did not motivate it at the time of the decision." *Bookman*, 2009 WL 1360673, at *11 (quoting Scully *v. Summers*, No. 95-Civ.-9091, 2000 WL 1234588, at *15 (S.D.N.Y. Aug. 30, 2000)). "Nor may the employer meet its burden in such a case by merely showing that at the time of the decision it was motivated only in part by a legitimate reason." *Id.* The employer "must show that its legitimate reason, standing alone, would have induced it to make the same decision." *Price Waterhouse,* 490 U.S. at 252.

     Here, plaintiff alleges that at her termination meeting, either her direct manager or the manager of the entire store told her that "there was no way they could keep [her] working there in [her] state of pregnancy and that in time [she] would not be able to do any work." (Comp. (Doc. No. 1) at 6; Pl. Tr. (Doc. No. 35-2) at 152-153.) Defendants implicitly dispute this statement by indicating that they "had no knowledge that Plaintiff was pregnant while she was employed by Costco." (Declaration of Jeffrey Fernandes (Doc. No. 34) ("Fernandes Dec.") at ¶ 12; Holmes Dec. at ¶ 10.) Although there is no corroboration of plaintiff's statement, if believed, one could hardly imagine more direct evidence of discrimination. At the very least, it creates a disputed issue of material fact, which for purposes of this motion, must be resolved in favor of plaintiff as the non-moving party. Therefore, the Court finds that "there are - - at a minimum - -

disputed issues of material fact as to whether Plaintiff would be entitled to a shift of the burden of proof under *Price Waterhouse*." *Bookman v. Merrill Lynch*, No. 02 Civ. 1108(RJS), 2009 WL 1360673 at *15 (S.D.N.Y. May 14, 2009); *see also Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1181 (2d Cir. 1992).

Defendants have offered a litany of reasons why it would have made the same decision even had it not considered her pregnancy. As courts have held, the question is more aptly targeted as to what "motivate[d] [defendant] at the time of the decision." *Smith*, 2009 WL 3170302, at *6 (quotation marks omitted).[4] Here, plaintiff alleges that she was told that she was being fired because of her pregnancy. Accepting, for the moment, that statement was actually made, a reasonable jury could find it evidence that the defendant's numerous "legitimate and sufficient reason[s]" were not defendant's actual motivation. *Bookman*, 2009 WL 1360673, at *11. This is particularly true in the circumstances here where plaintiff worked for Costco for only two weeks, and the ostensible reasons for her termination – alleged insubordination and multiple failures to comply with work-related procedures, all of which are disputed by plaintiff – appear to have been documented solely in records dated on the day of her termination, which documents plaintiff disputes she ever saw.[5] (Pl. Tr. (Doc. No. 35-2) at 112, 126; Compl. at 12, 14.)

---

[4] Read liberally, plaintiff makes a hearsay objection to the allegations contained in defendant's internal documents and declarations. However, the Court may consider such documents on this motion to the extent they are offered to show the state of mind of defendant's representatives in making employment decisions with regard to plaintiff. *See McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("[Plaintiff] is attacking the *reliability* of the evidence supporting [defendant's] conclusions. In a discrimination case, however, we are decidedly not interested in the truth of the allegations against [p]laintiff. We are interested in what *motivated* the employer") (internal quotation marks omitted) (emphasis in original); *see also, e.g.*, *Duviella v. JetBlue Airways Corp.*, No. 04-CV-5063, 2008 WL 1995449, at *5 (E.D.N.Y. May 06, 2008) ("In a discrimination case, the truth of allegations made by an employer against a plaintiff is immaterial, for the ultimate issue is what motivated the employer."); *Ancheril v. Conn.*, No. 06-CV-1019, 2008 WL 2324130, at *3 (D. Conn. June 02, 2008) (holding that personnel documents were being offered to show state of mind of supervisors in making employment decision and, therefore, were not hearsay.).

[5] In the space for plaintiff's signature, these records indicate that plaintiff "refused to sign." (Lowe Dec. at Exs. I, M, N, O, P.)

All of these disputed issues of material fact preclude summary judgment.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment (Doc. No. 30) is DENIED. This matter is re-committed to the assigned Magistrate Judge for supervision of any settlement discussions, and all remaining pre-trial issues including the preparation of a Joint Pre-Trial Order.

The Clerk of Court is directed to mail a copy of this Memorandum and Order to plaintiff *pro se*.

SO ORDERED.

Dated: Brooklyn, New York
       March 30, 2012

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge